NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0515n.06

No. 08-5566

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 27, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| TREKO LAMONT WOODARD, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

Before: MCKEAGUE and WHITE, Circuit Judges, and MARBLEY, District Judge.[*]

**MARBLEY, District Judge.** Defendant-Appellant Trecko Woodard ("Woodard") appeals his sentence following his plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. At sentencing, the district court applied a four-point enhancement under Section 2K2.1(b)(6) of the United States Sentencing Guidelines ("U.S.S.G.") for possessing the gun in connection with another felony offense, namely the aggravated assault of his girlfriend. Woodard contends that the district court's application of the enhancement was improper and requests that this Court vacate his sentence and remand for resentencing. For the following reasons, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

### A. Facts

On December 29, 2006, Woodard got into an argument with Bobbie Waters ("Waters"), a girlfriend with whom he was living in an apartment. (Record on Appeal ("ROA") Tr. Vol. 4, 36-38.) During the course of the argument, Woodard pulled out a gun and waved it at Waters. (*Id*. at 11, 38.) He then hit her on the arm with the back of the hand in which he held the gun. (*Id*.) In response, Waters left the apartment, contacted Vicki Crick ("Crick") at the rental office, and asked for help getting Woodard out of her apartment. (*Id*. at 8-9, 43.) Crick called the police when she learned that Woodard had hit Waters. (*Id*. at 9.)

Metropolitan Nashville Police Department Officer Leon Taylor ("Officer Taylor") responded to the call. (*Id*. at 5-6.) When he arrived at the scene, Waters told him that she had argued with Woodard, that he pulled a gun and waved it at her, that he told her "he had been wanting to shoot somebody anyway," and that he hit her on the upper arm. (*Id*. at 11.) Officer Taylor saw a minor bruise on Waters' arm, which was consistent with her having been hit with an object. (*Id*. at 12.)

Waters also told Officer Taylor that she wanted to press charges against Woodard. (*Id*. at 17.) Officer Taylor went up to the apartment and arrested Woodard. (*Id*. at 12.) In the apartment, he found a cocked and loaded .38 caliber revolver. (*Id*. at 12-14.) Woodard was charged with aggravated assault as a result of this incident. (*Id*. at 17.) The aggravated assault charge was ultimately dropped, however, because Waters failed to appear to testify against Woodard. (*Id*. at 17.)

The December 2006 incident was not the first violent episode between Woodard and Waters. Roughly six months earlier, when Waters was pregnant, Woodard kicked down the door to her

apartment, grabbed her by the hair, and forced her into a car. (*Id*. at 44-45.) Waters called the police on that occasion. (*Id*. at 44.)

## B. Procedural History

On August 8, 2007, Woodard was indicted for unlawfully possessing a firearm as a felon based on the gun found in Waters' apartment on December 29, 2006. (ROA Vol. 1, 13.) Woodard pled guilty to that charge. (*Id*. at 15-19.) At sentencing, the government sought to apply two sentencing enhancements. The first was a two-level enhancement for obstructing justice based on the Government's claims that Woodard threatened Waters during calls from jail to prevent her from testifying against him on his assault charge. (ROA Tr. Vol. 4, 8, 69.) The district court refused to apply that enhancement. (*Id*. at 98-99.)

The second was a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for possessing the gun in connection with the alleged aggravated assault of Waters. At the sentencing hearing, Waters testified that Woodard waved the gun at her and hit her with the hand in which he held the gun. (ROA Tr. Vol. 4, 38.) Waters stated, however, that she was not afraid that Woodard was going to cause her bodily harm, to shoot her, or to hit her with the gun. (*Id*.) Specifically she testified as follows:

> Q. At the time that you and Trecko were fighting, did you at any time fear that he was going to cause you bodily harm?
>
> A. No. I was just shocked, surprised like, Oh, my God.
>
> Q. At the time that Trecko struck you, did you have any fear that he was going to use that gun to harm you?
>
> A. Like kill me or something?

Q. Yes, ma'am.

A. No.

Q. Did you believe at any time during this fight that he was going to use the gun itself to strike you?

A. No.

(*Id*.) She explained that she contacted the rental office because she couldn't get Woodard out of her apartment by herself. (*Id*. at 42-43.) She also explained that she didn't testify against Woodard on the aggravated assault charge because "I didn't want nothing bad to happen to him. He was just—we was just upset that day." (*Id*. at 40.)

At the close of the sentencing hearing, the district court gave Woodard a four-point sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)[1] because Woodard used or possessed the gun in connection with his aggravated assault of Waters. (*Id*. at 99.) In response to Woodard's objection to the enhancement, the he district court explained that assault is defined under the Tennessee code as "reasonable fear of eminent bodily injury." (*Id*.) Despite Water's testimony at the hearing, the court determined that Waters feared Woodard. (*Id*.) The court explained that:

> I think there was a reasonable fear of eminent bodily injury, and that's best evidenced by the fact that Ms. Waters contacted the rental office. And it is evidence that she feared Mr. Woodard, and it is also after actually being battered as part of the assault and that he hit her.

(*Id*. at 99-100.) The district court "also credit[ed] the testimony of Officer Taylor regarding

---

[1] Prior to the 2006 amendments to the Sentencing Guidelines, Section 2K2.1(b)(6) was numbered as Section 2K2.1(b)(5).

statements that were made to him by Ms. Waters that Mr. Woodard waved the gun at her in connection with striking her and that waver is a display and use of the firearm." (*Id*.)

The enhancement bumped up Woodard's sentencing guidelines range from 77-96 months to 110-120 months.[2] (*Id*. at 105.) The court sentenced Woodard to 110 months imprisonment, the lowest possible sentence within the advisory guideline range. (*Id*.) Woodard timely appealed. On appeal he contends that the district court improperly enhanced his sentence based on the aggravated assault because Waters testified that she did not fear imminent bodily injury.

## II. JURISDICTION

The district court had subject-matter jurisdiction under 18 U.S.C. § 3231 because district courts have original and exclusive jurisdiction over federal crimes. This Court has jurisdiction over Woodard's appeal under 28 U.S.C. § 1291 because the district court entered final judgment on May 1, 2008.

## III. STANDARD OF REVIEW

We review a sentencing court's factual findings for clear error and give "due deference" to the district court's determination that the U.S.S.G. § 2K2.1(b)(6) enhancement applies. *United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003); *United States v. Ennenga,* 263 F.3d 499, 502 (6th Cir. 2001). Clear error will only be found where, after reviewing all the evidence, we are left with

---

[2] Without the enhancement Woodard's offense level would have been 21 (a base level of 24 minus 3 points for his acceptance of responsibility) and his criminal history level was 18, generating a 77-96 month guideline range. With the enhancement his offense level was 25 (24 base level plus 4 points for the enhancement, minus 3 points for his acceptance of responsibility) which generated a guidelines range of 110-137 months given his criminal history. Because there is a ten year statutory maximum, however, his guidelines range was actually 110-120 months as properly calculated by the district court.

the "definite and firm conviction that a mistake has been made." *Id*. If a matter presents strictly a question of law regarding the application of the Sentencing Guidelines, we conduct a *de novo* review. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002). Therefore, to the extent that Woodard challenges the district court's factual conclusions underlying the aggravated assault, the standard of review is clear error. To the extent that Woodard challenges the district court's legal conclusions regarding the proper interpretation of the elements of the Tennessee assault statute, the standard of review is *de novo*.

### IV. LAW & ANALYSIS

A sentencing court may apply a four-level sentencing enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). To apply the enhancement, the sentencing court must find by a preponderance of the evidence that: (1) the defendant committed "another felony offense" and (2) used or possessed a firearm in connection with that offense. *United States v. Richardson*, 510 F.3d 622, 626 (6th Cir. 2007); *see also United States v. Gates*, 461 F.3d 703, 707 (6th Cir. 2006) (preponderance standard). A "felony offense" is defined by the guidelines as "any offense (federal state or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1, cmt. n.4.

Under Section 39-13-101(a) of the Tennessee Code, a person can commit assault in three ways:

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2)  Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3)  Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

An assault is "aggravated" and punishable by over one year in prison if the perpetrator "[i]ntentionally or knowingly commits an assault" and "uses or displays a deadly weapon." Tenn. Code. Ann. §§ 39-13-102 (aggravated assault defined), 40-35-112 (penalties). In this case, the district court found that the sentencing enhancement applied because Woodard possessed or used the gun in connection with the aggravated assault of Waters. (ROA Tr. Vol. 4, 99.) In reaching that conclusion, the district court expressly relied on the definition of assault in § 39-13-101(a)(2), i.e., causing reasonable fear of imminent bodily injury. (*Id*.)

### A.  Assault Under Tenn. Code Ann. § 39-13-101(a)(2)

Woodard argues that the district court erred in applying a four-point enhancement to his sentence based on the alleged aggravated battery of Waters because the Government failed to show that Waters was subjectively afraid as required to sustain an assault charge under Tenn. Code Ann. § 39-13-101(a)(2). He bases this challenge on the fact that Waters testified at his sentencing hearing that she was not afraid.

Under the plain language of Tenn. Code Ann. § 39-13-101(a)(2), the "fear" requirement is both subjective and objective, meaning that the defendant must actually "cause" the victim to fear and the victim's fear must be objectively reasonable. Tennessee case law makes clear, however, that the victim's fear can be established purely by circumstantial evidence, even if the victim denies being

fearful. *State v. Stallings*, No. E2005-00239-CCA-R3-CD, 2006 WL 2061736, at \*21 (Tenn. Crim. App. July 26, 2006) (collecting cases in which the victim's fear was inferred from the circumstances of the assault); *State v. Schrantz*, No. W2002-01507-CCA-R3-D, 2003 WL 22888910, at \*3-4 (Tenn. Crim. App. Dec. 2, 2003) (fear of imminent bodily injury could be inferred from circumstances even though victim "vehemently denied" being afraid); *see also Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973) (criminal offense may be proven exclusively through circumstantial evidence). In other words, "[t]he element of 'fear' is satisfied if the circumstances of the incident, within reason and common experience, are of such a nature as to cause a person to reasonably fear imminent bodily injury." *State v. Whitfield*, No. 02C01-9706-CR-00226, 1998 WL 227776, at \*2 (Tenn. Crim. App. May 8, 1998) (finding fear of imminent bodily harm despite victim's testimony that he was not afraid).

In *Schrantz*, the defendant argued that his assault conviction under § 39-13-101(a)(2) was improper because his girlfriend, the victim, testified that she was not afraid of him during the alleged assault and characterized him as "a big teddy bear" who would not hurt her. 2003 WL 22888910, at \*1. The assault stemmed from an argument between the defendant and his girlfriend at a gas station that culminated in the defendant crawling into his girlfriend's locked car through the hatchback and beating her. *Id*. The *Schrantz* court affirmed the defendant's conviction explaining that despite the victim's "vehement denial" the circumstances of the case supported the inference that the she reasonably feared imminent harm. *Id*. at \*3-4. As evidence of the victim's fear, the court pointed to the fact that that the she came into a store to ask the clerk to call 911, that she locked

the door to her car to try to keep the defendant out, that witnesses described her as appearing scared, and that witnesses observed the defendant hitting the victim. *Id.* at *3.

Similarly in this case, the district court's conclusion that Waters was afraid, despite her testimony to the contrary, was supported by ample evidence. Waters admitted that Woodard hit her while holding a gun. As the district court noted, her fear was further evidenced by her behavior following the incident. She left the apartment and contacted the rental office to try to get Woodard removed from her house. The court also credited Officer Taylor's testimony about what Waters said immediately following the incident. According to Officer Taylor, Waters told him that Woodard waved a gun at her, hit her and told her that "he had been wanting to shoot somebody anyway." (ROA Tr. Vol. 4, 11.) Waters also showed Officer Taylor a minor bruise on her arm, which was consistent with her having been hit with an object and told him that she wanted to press charges. Furthermore, the evidence established that there was a history of domestic violence between Woodard and Waters, and that she had previously called 911 when he kicked down her door and dragged her into a car. Given all of the evidence presented at the sentencing hearing, the district court's finding that Waters reasonably feared imminent bodily injury when Woodard brandished a loaded gun at her and struck her was not clearly erroneous. *See Whitfield*, 1998 WL 227776, at *2 ("Apprehension of imminent bodily harm may be inferred from the conduct of the victim following the assault.")

That conclusion is not altered by *State v. McKnight*, 900 S.W.2d 36, 49 (Tenn. Crim. App. Nov. 21, 1994), on which Woodard relies. The *McKnight* court held that a defendant could not be convicted of assault for fondling and performing oral sex on a thirteen-year-old because the child

admitted that he consented to the advances and that they made him "feel good." *Id*. at 49. Although the case generally supports the proposition that subjective fear is an element of assault, it does not speak to the specific question before this Court, i.e., whether fear can be inferred from circumstantial evidence despite a victim's testimony that she was unafraid. Furthermore, unlike in this case, in *McKnight* there was no circumstantial evidence suggesting that the boy was actually afraid despite his testimony to the contrary. As neither party suggests that Waters consented to being hit by Woodard, *McKnight* does not alter the result in this case.

Woodard next argues, relying on the Ninth Circuit's ruling in *United States v. Brown*, that a remand for resentencing is proper because the district court's ruling might have been based on the erroneous notion that it need not find actual fear as an element of an assault claim under Tennessee law. 259 F.App'x 944, 945 (9th Cir. 2007) (holding that a remand for resentencing was proper were the district court made no finding with respect to whether the assault victim feared harm and the Washington assault statute required proof that the victim felt fear). He contends that "[w]hile the District Court may have suggested that Waters suffered the requisite actual fear, it did not expressly find as such." (Appellant's Br. 18.)

That argument, however, is belied by the transcript of the sentencing hearing. It is true that the Government erroneously argued at the hearing that subjective fear was not a statutory requirement of a § 39-13-101(a)(2) assault. (ROA Tr. Vol. 4, 95). Nevertheless, the record shows that the district court expressly found that Waters experienced fear stating, "I think there was a reasonable fear of eminent bodily injury, and that's best evidenced by the fact that Ms. Waters contacted the rental office. And *it is evidence that she feared Mr. Woodard . . . .*" (*Id*. at 99

(emphasis added).) Because it is clear from the record before us that the district court found that Waters feared harm, *Brown* is inapposite to the facts of this case.

Finally, Woodard argues that even if the district court found that Waters was afraid, its application of the sentencing enhancement was erroneous because it failed adequately to explain why it found Waters' sentencing hearing testimony incredible. (Appellant's Reply Br. 6.) In support of that position, Woodard relies on three out-of-circuit cases suggesting that a sentencing court's calculation of the drug amount in possession convictions may be clearly erroneous where the drug amount was testified to by an unreliable witness, the court fails specifically to explain its credibility determinations, and the record does not otherwise corroborate the amount. *United States v. Acosta*, 85 F.3d 275 (7th Cir. 1996); *United States v. Brothers*, 75 F.3d 845, 852 (3d Cir. 1996); *United States v. Lee*, 68 F.3d 1267 (11th Cir. 1995). These cases, however, were motivated by policy concerns specific to sentencing determinations based on drug quantities, which are inapplicable to Woodard's case. Namely, that courts "should exercise particular scrutiny of factual findings relating to amounts of drugs involved in illegal operations, since 'the quantity of drugs attributed to the defendant usually will be the single most important determinant of his or her sentence.'" *Brothers*, 75 F.3d at 849 (quoting *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992)). Moreover, unlike the drug quantity amounts in those cases, which could not be independently corroborated, the sentencing judge in this case could, and did, look to Waters' behavior at the time of the incident and the violent history of Waters and Woodards's relationship as verification of his factual finding. We are unaware of any cases in this circuit which adopt the reasoning of *Acosta*, *Brothers*, and *Lee*, or

any cases extending that reasoning to cases not involving drug possession convictions, and we find no reason to do so in this case.

The sentencing court's factual finding that Waters was afraid rests in part on credibility determinations that are uniquely within the province of the district court and which we will not disturb unless they are "clearly contrary to the facts." *United States v. Mayle*, 334 F.3d 552, 559 (6th Cir. 2003). Woodard asserts that Waters' post-incident conduct does not clearly indicate fear and speculates that it could have been motivated by the desire of an "upset" Waters to retaliate against Woodard.[3] (Appellant's Br. 26.) He claims that the conclusion that Waters was afraid is contrary to the facts because Woodard remained in the apartment playing video games after the assault, supposedly indicating that he did not frightened Waters, and because Waters spoke with Woodard for hours while he was on pretrial detention. (*Id*.)

Despite Woodard's speculation, the district court's finding was not contrary to the evidence, which supported a conclusion that Waters was afraid at the time of the incident, even if she later made peace with Woodard. Waters admitted that Woodard brandished a gun at her during an argument and that he struck her with the hand holding the gun. She also admitted that in response she fled the apartment to seek help from the rental office. She testified that she wanted to get Woodard out of the apartment but was unable to do so herself. The evidence shows that the domestic disturbance was sufficiently serious to warrant a 911 call. According to Officer Taylor,

---

[3] Woodard had previously been banned from the apartment complex as a trespasser and was not supposed to be on the premises. (ROA Tr. Vol. 4, 9.) Woodard cites this fact as evidence that Waters contacted the rental office in order to "impulsively punish Woodard . . . with a retaliatory eviction." (Appellant's Reply Br. 8.)

Waters told him that Woodard said he "wanted to shoot someone anyway." She even showed him a bruise on her arm caused by the blow. Officer Taylor also testified, and Waters did not deny, that she wanted to press charges against Woodard at that time. Furthermore, when asked why she failed to appear to testify against him on the aggravated assault charge, she did not deny that the assault occurred but instead stated that she "didn't want nothing bad to happen to him." (ROA Tr. Vol. 4, 45.) In short, there is ample record evidence from which the district court could conclude that Waters was afraid at the time of the assault, even though she later denied being afraid.

Viewing the record as a whole, we are not left with the definite and firm conviction that a mistake has been made and see no reason to disturb the district court's credibility determination. The district court's conclusion that Waters was afraid is based on sufficiently reliable record evidence—the testimony of Officer Taylor and Waters' behavior at the time of the incident. *See United States v. Hadley*, 431 F.3d 484, 510-14 (6th Cir. 2005) (sentencing court did not err by relying on domestic abuse victim's post-incident statement that defendant held a gun to her head when determining that defendant used or possessed a gun in connection with a crime of violence despite victim's recantation at sentencing). While Woodard may not agree with the district court's credibility determination or the inferences the district court drew from Waters' conduct, those factual findings were neither contrary to the facts nor clearly erroneous. The sentencing judge was not bound to explain in greater detail his decision to credit the Waters' behavior and the corroborating testimony of Officer Taylor over Waters' sentencing hearing testimony.

The district court did not clearly err in finding that Waters was afraid or in concluding that the gun was used in connection with an aggravated assault. Therefore, the four-level enhancement was properly applied.

### B. Assault Under Tenn. Code Ann. § 39-13-101(a)(3)

As an alternative, the Government argues that the U.S.S.G. § 2K2.1(b)(6) enhancement can be upheld on the grounds that Woodard's conduct constituted an assault under Tenn. Code Ann. § 39-13-101(a)(3) because being hit by someone who is holding a gun is physical contact that a reasonable person would regard as extremely offensive or provocative. (Appellee's Br. 13.) The Government correctly points out that § 39-13-101(a)(3) does not require proof of the victim's subjective fear as an element of the offense. Nevertheless, the Government did not argue this theory to the district court when requesting the enhancement. Instead, the Government argued and the district court based its application of the enhancement on the definition of assault contained in § 39-13-101(a)(2), which includes the "cause fear" requirement. As we have already determined that the application of the sentencing enhancement was proper on the grounds raised before the district court, and the Government's new assault theory was not fairly presented in the record, we decline to consider this alternative argument.

### V. CONCLUSION

For the foregoing reasons, we **AFFIRM** Woodard's sentence.