**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0624n.06

Case No. 16-6402

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 09, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GREGORY LAMAR GILLESPIE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: CLAY, COOK, and WHITE, Circuit Judges.

CLAY, Circuit Judge. Gregory Gillespie appeals the district court's calculation of the Guidelines range under U.S.S.G. §§ 2K2.1(b)(6)(B) and 3A1.2(c)(1) and the ultimate sentence imposed after Gillespie pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). For the reasons set forth below, we **REVERSE** the district court's ruling on the sentencing enhancements, **VACATE** Gillespie's sentence, and **REMAND** for resentencing using the appropriate Guidelines range.

**BACKGROUND**

On June 9, 2015, Chattanooga Police Officer Gary Williams received two calls about drive-by shootings involving a white Ford Explorer. After locating the SUV, Officer Williams turned on his blue overhead lights and attempted a traffic stop, but the SUV sped away. Officer

Williams pursued the SUV, which eventually came to a stop. Gillespie exited the car from the right rear passenger side with a gun in his hand. Officer Williams struck Gillespie with his patrol car because he feared for his life. The impact dislodged the gun from Gillespie's right hand. Gillespie fled through an alley, but another officer apprehended him.

Gillespie pleaded guilty to possessing a firearm as a felon, resulting in a Sentencing Guidelines base offense level of 14. 18 U.S.C. § 922(g)(1); U.S.S.G. § 2K2.1(a)(6)(A). His Presentence Investigation Report ("PSR") added four points for possessing the firearm in connection with another felony—Tennessee aggravated assault—and six points because a law enforcement officer was the victim of the assault. U.S.S.G. §§ 2K2.1(b)(6)(B), 3A1.2(c)(1); Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). Gillespie objected to both enhancements.

At the sentencing hearing, Officer Williams testified in support of the enhancements. He recounted Gillespie exiting the Explorer: "He turned toward . . . me, he looks at me and makes eye contact with me and he brandishes the weapon at me in a drawing motion and muzzle-sweeping me and pointing the gun in my general direction." Gillespie's counsel cross-examined Officer Williams with the dash-cam video slowed down to one-quarter speed and still frames from the video. Officer Williams testified that Gillespie made eye contact with him at timestamp 21:52:14 in the video, although the dash cam did not capture it. On redirect examination, Officer Williams testified that the two still frames and quarter-speed video did not change his testimony—he was "certain" that Gillespie pointed the gun at him. The government contended that Officer Williams' testimony was not inconsistent with the dash-cam video, and that both combine to produce sufficient evidence showing aggravated assault under Tennessee law. Gillespie's counsel argued that Gillespie did not point the gun at Officer Williams and there was no aggravated assault.

The district court said it had no reason to believe Officer Williams was untruthful about what had occurred off-camera, so it denied Gillespie's objections to the aggravated assault and official victim enhancements. After a three-point decrease for accepting responsibility, Gillespie's total offense level was 21 and his criminal history category was IV, yielding a Guidelines imprisonment range of 57–71 months.

The district court asked the parties to address the 18 U.S.C. § 3553(a) sentencing factors, noting that it was contemplating an above-Guidelines sentence because of Gillespie's criminal history. Gillespie's counsel highlighted the "less than ideal circumstances" in which Gillespie grew up, plus the recent death of his grandmother (who raised him) and the birth of his twins. Gillespie also spoke, requesting leniency and stating that "[he] really do[es] want to do better." The government asked the court, in determining the final sentence, to focus particularly on the need to (1) provide just punishment, (2) protect the public, and (3) ensure an adequate deterrent. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

The district court acknowledged Gillespie's "truly tragic" upbringing, but it also recounted his "remarkable" criminal record. Balancing the two, the district court concluded that it must "impose a sentence that protects the public from further crimes" by Gillespie. The court sentenced Gillespie to 120 months imprisonment followed by three years of supervised release.

Gillespie appeals from the district court's decision and argues that the district court improperly calculated his Guidelines range and abused its discretion by departing from the Guidelines.

## ANALYSIS

### I.      Aggravated Assault of a Law Enforcement Officer and Sentencing Enhancements

#### A.      Standard of Review

We review the district court's factual findings for clear error and give "due deference" to the district court's determination that the U.S.S.G. § 2K2.1(b)(6) enhancement applies. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011). A factual finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) (citing *United States v. Perez,* 871 F.2d 45, 48 (6th Cir. 1989)). "[T]o the extent that [Defendant] challenges the district court's factual conclusions underlying the aggravated assault, the standard of review is clear error. To the extent that [Defendant] challenges the district court's legal conclusions regarding the proper interpretation of the elements of the Tennessee assault statute, the standard of review is *de novo.*" *United States v. Woodard*, 337 F. App'x 534, 537 (6th Cir. 2009).

"'Where there are two permissible views of the evidence,' the district court does not clearly err in accepting one interpretation over the other." *United States v. Hinojosa*, 606 F.3d 875, 882 (6th Cir. 2010) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 708 (6th Cir. 1999)). "Findings of fact anchored in credibility assessments are generally not subject to reversal upon appella[te] review." *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992). However, while findings based on credibility determinations are entitled to deference, "the trial judge may [not] insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). "Documents or

objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible . . . that a reasonable factfinder would not credit it." *Id.* Under such circumstances, we may "find clear error even in a finding purportedly based on a credibility determination." *Id.* (citation omitted).

**B.      Analysis**

Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), if the defendant "used or possessed any firearm . . . in connection with another felony offense," the sentencing court must increase his offense level by four. "To apply the enhancement, the sentencing court must find by a preponderance of the evidence that: (1) the defendant committed 'another felony offense' and (2) used or possessed a firearm in connection with that offense." *Woodard*, 337 F. App'x at 538 (citing *United States v. Richardson*, 510 F.3d 622, 626 (6th Cir. 2007)). Any federal, state, or local offense punishable by more than one year of imprisonment qualifies as a "felony offense" regardless of whether a charge was brought or conviction obtained. U.S.S.G. § 2K2.1, cmt. n.14. The sentencing court must increase his offense level by six if the defendant assaulted a law enforcement officer. *Id.* § 3A1.2(c)(1).

Gillespie argues that he did not commit an aggravated assault of Officer Williams because he did not point or brandish the gun at Officer Williams. He argues that the district court's conclusion that Gillespie did assault Officer Williams is clearly erroneous. He further argues that the district court's conclusion led to an incorrect Guidelines-range calculation.

Under Tennessee law, a person commits assault if the person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). A person commits aggravated assault if the person "[i]ntentionally or knowingly commits an assault" and the assault "[i]nvolved the use or display of a deadly weapon." Tenn.

Code Ann. § 39-13-102(a)(1)(A)(iii). Aggravated assault is a felony punishable by more than one year. Tenn. Code Ann. §§ 39-13-102(e)(1)(A)(ii), 40-35-112.

Officer Williams testified that when the SUV finally stopped, Gillespie opened the door and "was stepping out of the vehicle, he was pulling a handgun out of his pocket or waistband area." Officer Williams testified, "[Gillespie] turns towards me, he looks at me and makes eye contact with me and he brandishes the weapon at me in a drawing motion and muzzle-sweeping me and pointing the gun in my general direction." Officer Williams testified that he thought his life was in danger, so he "let off the brake" and struck Gillespie with his car. Officer Williams described the event as happening "extremely quickly." However, Officer Williams was "confident that when Mr. Gillespie exited the white Ford Explorer that he had a gun in his hand and that he pointed it at" Officer Williams. He said that Gillespie "clearly" pointed the gun at him in a sweeping motion and that he was "certain" he saw Gillespie point the firearm at him.

This encounter was captured by Officer Williams' in-car camera. The relevant section of the video is approximately three-seconds long, between timestamps 21:52:14 and 21:52:16. The video submitted by the defense has been slowed down to one-quarter speed. The video shows a white SUV being pulled over. As the SUV stops, at 21:52:14, the rear passenger side door opens and Gillespie begins to exit the SUV. As the vehicle door is opening fully, Gillespie is out of the camera's shot. At 21:52:15, Gillespie appears in view of the camera. Gillespie's pants are belted below his waist, halfway to his knees. His direction of sight is perpendicular to the police car and his body is bent as if he is preparing to run in the direction he is looking. Gillespie's right arm is bent and he is fumbling with a firearm about halfway to his armpit. In his other hand, Gillespie is holding his cell phone. Gillespie is holding the gun upside down. It looks like his right hand is wrapped around the trigger, frame, and barrel of the firearm. The barrel is

- 6 -

pointed behind Gillespie, the grip is pointed up, and the slide is in his hand. Indeed, Officer Williams confirmed that Gillespie was holding the gun "almost backward[]" and not in a way someone would typically hold a gun in order to discharge it. At 21:52:16, the police car hits Gillespie. Almost immediately upon impact, the gun leaves Gillespie's hand and flies across the police car and over the other side. Gillespie rolls up the car's hood and windshield, and then off the side of the car. At no point while Gillespie is in view of the camera does he point the gun at Officer Williams or brandish it.

The parties dispute whether Gillespie pointed the firearm at Officer Williams. The district court credited Officers Williams' testimony, finding there was no reason to believe the officer had been untruthful that the gun-pointing had occurred off camera. However, in order to accept that testimony, one would have to believe that Gillespie was able to open the door to the SUV, begin exiting the vehicle, pull a gun out of his pocket or waistband area, turn to Officer Williams, make eye contact with Officer Williams, point the gun at Officer Williams, and then bring the firearm back to his body, reverse the grip on the firearm, look perpendicular to the car and begin to run in that direction, all in less than *one* second. We find this incredibly unlikely, if not totally implausible.[1] Even though findings of fact anchored in credibility assessments are entitled to even more deference, the video completely undermines the Officer's testimony and the conclusion that Gillespie pointed the gun at him. Consequently, we find that it was clearly erroneous for the district court to conclude that Gillespie pointed the firearm at Officer Williams.

Still, even if Gillespie did not actually point the gun at Officer Williams, the government and the district court note that the language of the Tennessee statute only requires that the gun be

---

[1] We believe this unlikely even with the district court's suggestion that Mr. Gillespie could have flipped the gun like the cowboys in old western movies.

displayed to the officer, not that it be aimed at him. In *State v. Carter*, the Tennessee court found that "use or display" in the Tennessee statute meant "to show; exhibit; make visible." 681 S.W.2d 587, 589 (Tenn. Crim. App. 1984) (citation omitted) (finding the "open and visible use of the blackjack was a display of the weapon"). Similarly, in *State v. Hall*, the Tennessee court found that the defendant did not need to point the gun at the victim because "the statute only requires that the gun be displayed to the victim." No. M1998-00180-CCA-R3-CD, 2000 WL 298592, at *2 (Tenn. Crim. App. Mar. 23, 2000); *see also State v. Brown*, No. E2015-00899-CCA-R3-CD, 2016 WL 3633474, at *8 (Tenn. Crim. App. June 29, 2016) ("[T]he fact that the appellant had the handle of the gun protruding from his waistband was sufficient for the jury to conclude that the assault involved the display of a deadly weapon."). Consequently, the government argues, even if Gillespie did not point the firearm at Officer Williams, his action of grabbing the gun from the car, bringing it to his side, and making it visible to Officer Williams would qualify as displaying a weapon under the statute.

However, as explained below, merely displaying a weapon is not enough to establish aggravated assault in Tennessee, which requires proof that a person intentionally or knowingly caused another to reasonably fear imminent bodily injury. A person "acts intentionally 'with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.'" *Hall*, 2000 WL 298592, at *2 (quoting Tenn. Code Ann. § 39-11-302(a)). A person acts knowingly "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* (quoting Tenn. Code Ann. § 39-11-302(b)). Gillespie argues that he "did not intentionally or knowingly *cause* Officer Williams to be in fear." Gillespie explains that he did not point the gun at Officer Williams and he "would not be aware that merely running away with

his pants halfway to his knees while holding a gun upside down and backwards would be reasonably certain to put someone in fear of imminent bodily injury."

Tennessee caselaw confirms that a person cannot be found to have intentionally or knowingly caused another to reasonably fear imminent bodily injury by simply holding a gun in their presence. Mere visible possession of a firearm without anything more does not amount to aggravated assault. Rather, the display of a weapon *plus* something else, like a threat or aggressive conduct toward a person, is required to satisfy the mens rea requirement of Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). A contrary view would be especially problematic in an open-carry state like Tennessee.

For instance, in *Hall*, the state court found the evidence sufficient to sustain the defendant's conviction for aggravated assault where he intentionally and knowingly displayed a weapon to the victim and threatened her by saying "I should shoot you." 2000 WL 298592, at *2. In *Brown*, the state court found the evidence sufficient to support a conviction for aggravated assault where the defendant got out of a car, approached two boys with a gun visible in his waistband, and ordered them to show their pockets. 2016 WL 3633474, at *8. Both boys saw the gun and did as they were told. *Id*. In *State v. Woods*, the defendant was convicted of aggravated assault when he shot in the direction of a woman standing on her front porch screaming, even though he intended to kill the woman's husband who was running towards the porch. No. E2001-01027-CCA-R3-CD, 2003 WL 21663682, at *4 (Tenn. Crim. App. July 16, 2003). The court found "there was sufficient evidence that [the defendant] also acted with the reasonable certainty that [the victim] would be caused to fear imminent bodily injury" because the defendant was able to see and hear the victim, but still fired shots in her direction anyway. *Id*. *See also State v. Waters*, No. M2016-00522-CCA-R3-CD, 2017 WL 2361958, at *9 (Tenn.

Crim. App. May 31, 2017), appeal denied (Sept. 21, 2017) (unpublished) (finding sufficient proof to support a defendant's conviction for aggravated assault when "[t]he Defendant intentionally moved towards the victims while carrying a large crowbar[,]" "raised the bar above his head" as he got closer, and "repeatedly shouted the phrase: 'I'll kill you'"); *State v. Bryant*, No. 02C01-9707-CR-00286, 1999 WL 5633, at *8 (Tenn. Crim. App. Jan. 8, 1999) (unpublished) (finding "evidence sufficient to support the conclusion that the Defendant acted with the awareness that his conduct was reasonably certain to cause others . . . to fear imminent bodily injury" when "the Defendant entered his wife's car with a loaded gun, pointed the gun at his wife, and fired the gun while the car was beside the drive-thru window of a restaurant").

Here, Gillespie was holding a gun in the presence of Officer Williams. However, Gillespie did not point that gun toward Officer Williams. Gillespie also did not do anything like what happened in the cases cited above. He did not shoot the gun, he did not verbally threaten the Officer or make any demands of him, and he did not hold the gun in a threatening way. Gillespie merely held the gun while he attempted to run away. He was bailing from the scene and taking his possessions with him—gun in one hand, phone in the other. While it is understandable that Officer Williams, in the uncertainty of the moment, may have been fearful at the sight of Gillespie fleeing with a gun in his hand, nothing in the circumstances suggests that Gillespie intentionally or knowingly caused Officer Williams to reasonably fear imminent bodily injury by holding the gun upside down as he ran.

In sum, the district court's finding that Gillespie pointed a gun at Officer Williams was clearly erroneous, and the district court erred when it found that Gillespie's action in carrying a firearm with him as he attempted to flee from police amounted to aggravated assault under Tennessee law.

Both the government and Gillespie agreed that if there was no aggravated assault, the official victim enhancement could not apply. Consequently, we find that the district court improperly calculated Gillespie's Guidelines range by adding four points for possessing the firearm in connection with another felony offense—Tennessee aggravated assault—and six points for an official victim enhancement.

## II. Above Guidelines Sentence

### A. Standard of Review

This Court reviews sentencing decisions deferentially, for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "This review has two components: procedural reasonableness and substantive reasonableness." *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). A district court commits a procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. . . ." *Gall*, 552 U.S. at 51.

To be substantively reasonable, the length of the sentence "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation and internal quotations omitted). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). "A properly calculated advisory guidelines range represents the starting point for substantive-reasonableness

review because it is one of the § 3553(a) factors and because the guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *Id.* (citing *Gall*, 552 U.S. at 49) "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Gall*, 552 U.S. at 47.

"[W]here a district court makes a mistake in calculating a guidelines range for purposes of determining a sentence under section 3553(a), we are required to remand for resentencing unless we are certain that any such error was harmless." *United States v. Young*, 847 F.3d 328, 370 (6th Cir. 2017) (quoting *United States v. Vicol*, 514 F.3d 559, 561 (6th Cir. 2008)). "A sentencing error is harmless if we are certain that the error 'did not affect the district court's selection of the sentence imposed.'" *Id.* (quoting *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005)).

## B.    Analysis

At sentencing, the district court noted that the Guidelines range is advisory, that Gillespie's story was "tragic," but that he had a "remarkable" criminal history and that a higher sentence than the Guidelines recommended was necessary in order to "protect[] the public from further crimes of the defendant." Consequently, the district court imposed a 120-month sentence—the statutory maximum for being a felon in possession of a firearm.

Gillespie argues that the district court inadequately explained the ten-year sentence and neglected to consider factors, including the violent circumstances of his upbringing and his mental illness. The government argues that the district court properly exercised its discretion when it concluded a ten-year sentence was necessary in order to protect the public from Gillespie. Additionally, with regard to any error in the district court's application of the

sentencing enhancements, the government argues the error was harmless because the court concluded that an above-Guidelines sentence was necessary. Gillespie replies that the district court's erroneous conclusion that Gillespie pointed a gun at Officer Williams was not harmless because it affected the district court's analysis under the 18 U.S.C. § 3553(a) sentencing factors by making the "nature and circumstances of the offense" factor look far more serious.

As discussed above, the district court erroneously found that Gillespie committed aggravated assault against Officer Williams. Thus, the offense level should not have been increased by 10 points and his Guidelines imprisonment range should not have been 57–71 months. Gillespie argues that his correct Guidelines range should be 21–27 months. Because the district court did not start with a properly calculated Guidelines range and also based its decision on a clearly erroneous fact, we find that the sentence was procedurally unreasonable. We do not find this mistake in calculating the Guidelines range harmless. The district court's finding that Gillespie assaulted the police officer impacted the Guidelines range. On top of that, it likely influenced the district court's analysis under 18 U.SC. §3553(a), especially where the district court was to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The circumstances of the offense certainly seem more serious after finding that Gillespie is the kind of person who points a gun at a police officer. We cannot say that the error did not affect the district court's selection of the sentence imposed. Because the district court abused its discretion when it sentenced Gillespie, we vacate his sentence and remand the case for resentencing.

**CONCLUSION**

For the foregoing reasons, we **REVERSE** the district court's ruling on the sentencing enhancements, **VACATE** Gillespie's sentence, and **REMAND** for resentencing in light of the properly scored guideline range.

**COOK, Circuit Judge, dissenting.** I respectfully dissent. I would affirm the district court's ruling on the sentencing enhancements and the 120-month sentence.

I do not think the district court clearly erred in concluding that Gillespie pointed his gun at Officer Williams. Judge Collier deemed the Officer's testimony credible, finding no reason to doubt his explanation that the gun-pointing took place off-camera. And Officer Williams had ample opportunity—direct, cross, redirect, and recross examinations—to walk back his account, but he remained steadfast even after watching the dash-cam video at various speeds and reviewing the still frames.

I disagree that the dash-cam video "completely undermines the Officer's testimony." (Maj. Op. at 7.) Rather, as in *United States v. Braswell*, "the video simply does not show the events in question . . . . Therefore the video neither confirms nor disproves the government's argument" about the gun-pointing. No. 16-6092, 2017 WL 3588305, at *3 (6th Cir. Aug. 21, 2017). The *Braswell* panel did not overturn the lower court's credibility determination, and neither should we in the instant case. *Id.* at *4; *see also United States v. Navarro-Camacho*, 186 F.3d 701, 707 (6th Cir. 1999) ("[T]he simple fact that we have been able to evaluate [a videotape] on direct review does not change the fact that we review the district court's findings of fact for *clear error. . . .* Where, as here, factual findings rest in large part on credibility determinations, we afford district courts even greater deference.").

The majority claims that, in order to accept Officer Williams's testimony, we must believe a laundry list of things about what Gillespie did upon exiting the car. (Maj. Op. at 7.) But these actions need not occur seriatim. Surely you can open a car door while simultaneously holding something else in your free hand and making eye contact with someone. It seems at least plausible to me that Gillespie, while off-camera, exited the Ford Explorer pointing the gun

at Officer Williams. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

Even if the gun-pointing finding was clearly erroneous, Gillespie nonetheless *displayed* the firearm to Officer Williams. And that is what Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) requires. Gillespie may not have wanted Officer Williams to fear for his physical safety. But in Tennessee, one "can act knowingly irrespective of his or her desire that the conduct or result will occur." *State v. Gray*, 960 S.W.2d 598, 604 (Tenn. Crim. App. 1997).

I disagree with the majority's conclusion that "nothing in the circumstances suggests that Gillespie" *knowingly* caused Officer Williams to reasonably fear imminent bodily injury when he displayed the gun. (Maj. Op. at 10.) Here are the circumstances. Gillespie was riding in a Ford Explorer involved in two drive-by shootings earlier that day. The driver sped away when the police attempted a traffic stop, leading to a high-speed nighttime chase through residential areas of East Chattanooga. The Explorer eventually came to an abrupt stop within feet of the police cruiser. Gillespie quickly opened the right rear passenger door of the car—the side closest to Officer Williams—and bolted out with a gun in his right hand—the hand closest to Officer Williams. Gillespie could have left his gun in the Explorer, but he didn't. He could have thrown the gun out the car window, but he didn't. The majority describes this as a man "taking his possessions with him," as if Gillespie was getting out of the car holding a bag of groceries. (Maj. Op. at 10.) Frankly, under these circumstances, I see no reason for Gillespie to have carried his gun with him other than to threaten with it or use it.

Turning to the district court's ultimate sentencing decision, I would affirm because I discern no abuse of discretion. I view Gillespie's sentence as procedurally reasonable; the district court evaluated both parties' arguments, considered the 18 U.S.C. § 3553(a) factors, and sufficiently articulated its reasons for imposing a 120-month sentence. *See United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). And to me the sentence passes muster as substantively reasonable, with the record including ample evidence validating the district court's decision. Per his Presentence Investigation Report, Gillespie's criminal history dates to 2003. In 2008 alone, Gillespie was charged with aggravated assault (twice), disorderly conduct, driving without a license, and attempted first degree murder. Given that these were juvenile adjudications, however, Gillespie did not receive any points that would impact his criminal history categorization. His adult criminal activities are similarly serious and include carrying weapons on school property, threatening to burn down and shoot up multiple houses, using a pistol during a domestic assault, and evading arrest.[2] What's more, the district court observed that Gillespie, during his allocution, failed to demonstrate "any real appreciation of the danger that he posed, the harm that he has caused, and . . . a way of life that is just replete with violence."

For these reasons, I respectfully dissent.

---

[2] And that says nothing of the charges against Gillespie that were dismissed for one reason or another—disorderly conduct, aggravated assault, theft, and domestic assault, to name several.